The next case today is Eulalia Lopez-Ramirez et al. versus Centro Medico del Turabo, Inc. et al. Appeal number 20-1937. Attorney Efron, please introduce yourself to begin. And would Attorney Roberto Ruiz Comas and Attorney Lopez de Vitoria please mute your audio and video at this time. Go ahead. Good morning, Your Honors. Good morning. May it please the court, Judge Thompson, may I reserve three minutes for rebuttal? Yes. Thank you. I'm David Efron for the appellant in this case. In this case, Your Honors, the district court eliminated our expert neurologist on a Daubert challenge without a Daubert hearing because his report initially did not include a statement of compensation, although he did provide his invoices later and other allegations. Without his report, Dr. Alan Houseneck himself was stricken as an expert because he was a neurologist, 60 years of experience, but a neurologist and not a neurosurgeon, which would only go to the weight of the evidence to be determined by the jury and not to his qualifications as a physician in Puerto Rico to testify as an expert. In the court's second opinion by Judge Arias, the district court dismisses the case by precluding plaintiff from using defendant's witnesses, which plaintiff reserved at the pretrial order. Although on both opinions, the district court specifically found that defendant's expert did not contradict Dr. Houseneck and his causation testimony that the basal spasm caused by defendant caused the damage to our client, which is a severe Bell's palsy on the left side of her face. As to the first opinion in order, there are certainly less punitive, severe measures or sanctions that the court could have taken to correct this situation than to exclude plaintiff's only experts. As to the second opinion in order, plaintiff has every right to bring opposing witnesses as her own, and it would be for the jury to evaluate and weigh that testimony, an opportunity that plaintiff did not get as her day in court was not to be afforded her by the district court. For what is discussed in our appellant's brief, we respectfully request that the judgment be reversed and remanded to the district court. I have plenty of time left to answer your questions, Your Honors. Your expert's report seems to say that because there was the injury, then there must have been some error in the surgery. Does it go beyond that and identify what the error was in the surgery and explain why it was negligence as opposed to just? Yes, Your Honor. Of course, the defense is saying that this was a reciprocal case, and it is not. It is clearly a case where our expert uses indirect or circumstantial evidence because he wasn't there, but he's very clear on the last page of the report where before saying that his opinion is with absolute medical certainty that the standard was unmaintained, before that he says that it should be pointed out and emphasized that it is the responsibility of the operative neurosurgeon to absolutely identify, isolate, and protect the nervous tissue and vascular circulation in the area. This is the standard of care and states that this standard of care did not happen in this case. Therefore, the vasospasm was caused by the defendant's negligence. But he never says, based upon what I observed in the record, this is why I'm concluding that that didn't happen. But he does, Your Honor. It makes specific reference to the operative record, to the operative report, the following paragraph. I just don't want to read all six pages of the report. But it does make reference to the medical report and the medical record, and it does indicate what standard of care was departed from and which caused the damage in this case. So he addresses both causation and the departure of the standard of care. In any event, he was eliminated on a DARPA challenge without a DARPA hearing. So we don't know what his methodology was as far as the court did not know what his methodology was before excluding him. Additionally, we had reserved the right to use defendant's expert, which I believe would have been very helpful. And, again, although we reserved that right in the pretrial order, we were not allowed to do that. I have some time to understand this point. I agree with you the report says there was a failure to isolate the nerve in question that could cause this kind of injury and that the standard of care would be to do so. Is your thought that that's all you need to say to identify a standard of care in causation, even if the only reason you're deducing that's what happened is that this is a relatively routine procedure and you had such a bad outcome? Partly. He also explained that in his deposition, which the court did not take into account, although the depositions were submitted by the defendants in their motions to dismiss and their motions eliminating, the court never made any reference to the deposition testimony of Dr. Housdink. What's he say there that's different than what we just discussed? Well, he just expounds on it more. It doesn't come to mind that he said anything much different. Also, remember that the deposition… I'm sticking with that point. I guess it's not a pure reciprocal case in which it's giving a theory of how the outcome must – we can deduce from the outcome, given the relative mundane nature of the surgery, that this happened. He is saying if this happened, that breached the standard of care. But is it permissible for an expert to identify the breach of the standard of care just based on the gap between expected outcome and actual outcome? Once that expert – absolutely. Once that expert reviews the medical record and does not find anything contradictory to his findings of causal relationship and the departure of the standard of care, an experienced neurologist like Dr. Housdink can certainly do that. Let me see if I can be a little bit more specific. He says that the doctor didn't identify, isolate, or protect the nerve. Is there something in his report that explains what was improperly done to identify or what was the negligence in isolating or what was the improper standard of care in protecting? He just, in a conclusory fashion, says that that's what should have been done. Even the defendant's expert says that's what should have been done, and the defendant says that's what she did do. But according to the operative report, that's not what she did. But he doesn't explain why he's there reaching that conclusion other than to say it obviously couldn't have happened because of the outcome. Well, his testimony, his position is that this was caused by a vasospasm that was caused by the defendant's departure from the standard of care. If she would have followed what she had to do, that vasospasm which caused the injury would not have occurred. You say the operative note says that she did something wrong. What are you referring to? What I meant to say is that he reviewed the operative note to make sure that his opinion was correct. He does say that the operative report discusses multiple perforators and the necessity to go no further with the procedure. Is this as simple as this could only happen if a nerve that shouldn't have been touched was touched? I don't think it's quite that simple. It's the standard of care not to touch that nerve. I don't think that's Dr. Hausnacht's testimony. I think his testimony goes beyond that as far as the measures that the defendant should have taken. That's what I'm getting at Judge Thompson's question, which is it would almost seem better to me if his position was this happens when the surgeon touches a nerve that shouldn't be touched during the surgery at all. Therefore, this happened, so I'm telling you it touched the nerve, and that just shouldn't be happening. Instead, he uses these more general words, isolate, protect, and I forget what the last word was. Identify, isolate, and protect. But he doesn't say what he's got in mind there, so it is a little puzzling what he's saying. I think we're saying the same thing. Dr. Hausnacht puts it in a way that he tries to state what should have been done in order to avoid touching the nerve but states that that nerve should not have been touched. He just gives alternatives as to what should have been done to avoid touching that nerve and that damage. Again, the basis of the appeal is being eliminated as an expert without having a doper hearing and then not allowing us to use our opponent's experts. Basically, that's the gist of our case, and we'll rest on our briefs. I'll get another opportunity to address you in rebuttal. Thank you, Your Honors. Thank you. At this time, Attorney Efron, please mute your audio and video. Attorney Lopez de Victoria, if you could please unmute, and you have a— please introduce yourself to begin your nine-minute response. Yes, this is Jeanette Lopez de Victoria on behalf of the appellee, Dr. Toledo. Good afternoon. Good afternoon. I have to digress from entering into my own argument and correct some misstatements that were made by Brother Counsel Efron. First of all, the district court did not exclude this expert for any of Rule 26 violations. There was, in fact, in his opinion and order on the motion in limine, he expressly stated that the fact that documents regarding the witnesses' compensation, that that had been cured by provision of invoices during the discovery process. The court's ruling was entirely based on Rule 702, and it goes to the reliability of the methodology employed by Dr. Hausnick. Now, in this case, Dr. Hausnick specifically and, in essence, disqualified himself. During his deposition, when he was asked about the procedure, he acknowledged that he had never participated in the type of procedure, that he had never taken part in any type of procedure using neuromonitoring equipment, such as that was used in this case, and that he would not be testifying as to deviations in the procedure per se. That his testimony would be limited to what the outcome was that occurred in this case, and that since there was an unfavorable outcome or an unwanted outcome, that that was the reason that he considered there to be negligence. And just to go to Judge Barron's, one of Judge Barron's questions to Brother Counsel Efron, as far as whether this is something as simple as touching at one point or manipulating an incorrect nerve. Yeah, I think I froze there for a minute, so I'll go back. I was addressing Judge Barron's specific question to Brother Counsel about whether this case was as simple as Dr. Toledo manipulating at any point the incorrect nerve, and it's not. You'd have to understand the procedure to know that the procedure as such requires that both the nerves and the vascular structures be moved using microsurgery so that they can be displaced, so that they can see if there's anything that is causing damage to another structure. As part of the procedure, there's neuromonitoring equipment that is utilized, which measures the effect of the most minimum movement by the surgeon, and it warrants and assesses whether there's any irritation or whether there's any damage to a nerve. Now, if, as appellants postulate, there had been negligence during the procedure and Dr. Toledo had injured or damaged a nerve, that would have immediately been reflected in the neuromonitoring equipment, which would have gone, that would have, in the tracings that are available, it would have displayed a flat line, and that never happened. In fact, the technical report for the surgery says that everything went as it needed to, as needed to happen during the course of the procedure, and it was when she reached a certain point of the procedure and saw that there were some nerves that were being irritated, which that, what that does is it, there's some, it's exhibited in the neuromonitoring equipment that she decided to stop. So she actually did not go forward before anything, any of the structures. Can I just ask you how to think about the issue conceptually for purposes of the gatekeeping question? Okay. You're giving arguments about why the nerve could not have been damaged, but I thought our question is what is the expert's account of what happened, and is he giving an account? So with respect to that question, if he had said, you know, this is the nerve that would cause it, in my experience, that nerve should not be damaged during one of these types of proceedings, the only way to explain what happened is that particular nerve was damaged when it shouldn't have been. Therefore, that is why this occurred, and the standard of care is such that there's no way to do this in which there would be damage. Would that be enough? That would have been enough if that would have been what plaintiff's expert had done in this case. What do you think is missing here in the report with respect to that, given the language that Judge Thompson quoted to you from the report? Okay, well, both in Dr. Howe's next report and in his deposition testimony, which was also considered by the court, there is no articulation as to how Dr. Toledo breached the standard of care. He does mention what the standard of care is. It's identify, isolate, or protect. Four minutes remaining. But he does not explain in any way which nerve was allegedly improperly touched, which nerve was improperly manipulated, which vessel was perhaps manipulated in an improper way. He doesn't go into any of that. He just says that this is the standard, and then since we have this outcome where she has these loss of hearing and some facial paralysis after the fact, that that is the reason that there was a deviation from the standard of care. So, go from there, then, to there's, I had to say also that in addition to the neuromonitoring data, the strips of the tracings of the data, I'm sorry, the strips of the neuromonitoring, the clinical data is also not suggestive of an injury during the procedure because in the first post-operative visit by Dr. Toledo with the patient, she notes that there is hearing in both ears and that basically everything is fine. So, the loss of hearing is something that occurred afterwards. Now, as far as the court's ruling on the motion for summary judgment, here the court requested in all likelihood and recognition that without expert testimony after they had already ruled for the conclusion that the plaintiffs would be unable to prove their case, requested that the defendants file motions for summary judgment. Is that a case management request by the court? I don't think it is. I think it's in cases where this type of situation arises where an expert is excluded, at least in a couple of cases that I have seen by Judge Arias. He does request that motions for summary judgment be filed. And how do you respond to his decision to not make your expert available, which plaintiff says was an error? Well, I don't think that that's an error, first of all, because the defense expert clearly says that what Dr. Toledo did as far as in her performance of the procedure was all correct. So there's nothing in his report or in the opinions that are stated in the report which would have supported plaintiff's claim of negligence. In this case, they did not depose the expert in the underlying case during discovery, so they didn't have any deposition testimony which would have led the court to think that there was any basis for finding that the doctor had been negligent in any way. So just going basically to the opinions that are stated in Dr. Brown's report, who was a defense expert, he would have testified consistent with the opinions there and they would have been that the doctor acted correctly. At the point when plaintiff's expert was excluded, was discovery complete? I believe it was, yes. Okay. And the other issue that was raised by Brother Counsel Ephedon was the use of circumstantial evidence, and I think that's something that I have to clarify. The Puerto Rico courts are very clear, and there's opinions to this effect, that in the case or in the context of claims for medical malpractice, expert evidence is required to prove the elements of the applicable duty of care, how the duty of care was breached, and causation. So the cases that are cited in the appellant's brief as far as the use of circumstantial evidence are all regular negligence cases. They are not medical malpractice cases where the Puerto Rico Supreme Court has been very clear that expert testimony is required to prove the deviation. That's time. If there's any other questions from the panel, I'd be glad to answer. If not, I would remit to the brief. Thank you very much. Thank you very much, Counselor. At this time, would Attorney Roberto Ruiz-Comas please unmute his device and introduce himself to begin? He has a one-minute response. Yes. Good afternoon. My name is Roberto Ruiz-Comas. I am the attorney for the hospital. I'm going to just take one minute because, in reality, the appellant's brief does not even mention any violation by the court in its dismissal of the case against the hospital. Therefore, since the appellant did not raise that issue in his opening brief, the operational pragmatic matter is that, in fact, the judgment of the court as to the hospital has to be confirmed because the appellant never did raise that argument in his appellant's brief. Second of all, and important also for the argument, is that, in the case of the hospital, the plaintiff expert did not mention at all any deviation from the standard of care from either any hospital staff or the nursing staff. And that is good in his expert report and his deposition. Therefore, it is my position that the judgment of the district court as to the dismissal regarding the case or claims against the hospital should be dismissed. Thank you very much. Thank you. Thank you, Attorney Ruiz-Comas. At this time, Attorney Efron, you have a three-minute rebuttal. Please reintroduce yourself to begin. Thank you very much, David Efron, for the appellants. As to Dr. Toledo's comments, first of all, if we go to page 6 of Dr. Hausknecht's report, which is page 90 of our appendix, Dr. Hausknecht does mention everything that Dr. Toledo's attorney is saying that is missing. So, in that sense, I don't want to be repetitive. We already went through it. As to what the hospital just brought up, the case was dismissed as to all of the defendants. The appeal is as to all of the defendants. The hospital is now raising for the first time in this argument the allegation, which we don't agree with, that they get to be scot-free because Dr. Hausknecht did not mention them. That's not true. I don't see Judge Kayada on my screen. I don't know. Oh, no. I see his bubble. Judge Kayada, are you in the meeting? Yes. Okay. You can hear everything? Yes, I can. Okay, great. May I proceed? Yes. Thank you. So, hospital's counsel is now raising for the first time that it was not mentioned in the report. Actually, when Dr. Hausknecht mentions the operator... Do you have an argument about the hospital in your opening brief? I don't. It was not necessary. We appealed as to all of them. We believe that if we get the case back as to Dr. Toledo, we get the case back against the hospital as well, and for the same reason, expert witness exclusion, both from our expert witness and from the opposing party's expert witness. So, in that sense, we did not mention anything about the hospital. It was not necessary. It was not brought up by them. All they did at the district court level was file jointers. They never had any of their own arguments as to Dr. Hausknecht or the facts of this case. Do I correctly read your expert report as saying that any time this procedure results in an infarction that there was negligence? Yes. I believe so. There's lots of literature on this exam. In fact, I think the best study shows 10% of the cases have results as bad or worse than your clients. So, what support, what standard of care, what does your expert point to to support the conclusion that any time you get this result, it must be because of negligence? Well, he submitted literature based on his opinion for that, and our client was hurt pretty badly with that condition. Point us to what literature we should look at to see the answer to my question. I don't have it with me. It's literature that he used. Did you point the district court to a particular citation in the literature? No, Your Honor. It was basically Dr. Hausknecht's information at his deposition. So, you'd like us to just thumb through all that literature and find in it somewhere a statement? No, I don't. I'll be happy to submit it if I'm given a short term to do that. You can file a 28, Jay. I will, Your Honor. Thank you very much. Based on that, unless there are other questions, we'll submit our appeal and briefs. And thank you all for your attention at this late time. Thank you. Thank you. That concludes arguments today. Counsel should please remove themselves from the meeting. The United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court.